UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WALTER O., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 20 C 5304 <br><br> Magistrate Judge Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

Walter O. seeks judicial review of the final decision of the Acting Commissioner of Social Security denying his claim for social security income ("SSI"). Walter requests reversal of the administrative law judge's ("ALJ") decision with an award of benefits or alternatively, a remand. The Commissioner seeks an order affirming the decision. Because the ALJ's decision is supported by more than a scintilla of evidence, the Court affirms the ALJ's decision.

**BACKGROUND**

Walter applied for SSI on May 4, 2018, alleging disability since January 1, 2012 due to bipolar disorder, depression, bulging discs, and chronic obstructive pulmonary disease. (R. 83-84). Walter was 45 years old at the time of his alleged onset date. *Id.* at 83. He was last employed over twenty years ago and has a 10th grade level education. *Id.* at 267, 369, 375. Walter's medical conditions are primarily treated with medication, but he also engaged in physical therapy and had an epidural injection. *Id.* at 58, 237, 410, 584, 599, 635, 658, 663.

On April 3, 2020, the ALJ issued a decision denying Walter's application. (R. 22-30). The opinion followed the required five-step evaluation process. 20 C.F.R. § 416.920(a). At step one, the ALJ found that Walter had not engaged in substantial gainful activity since May 4, 2018. *Id.*

at 24. At step two, the ALJ found that Walter had the severe impairments of bipolar disorder, depression, alcoholic neuropathy, lumbar degenerative disk disease, and chronic obstructive pulmonary disease. *Id.* At step three, the ALJ determined that Walter did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). *Id.*

The ALJ then concluded that Walter retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with the following additional limitations: occasional climbing ramps, stairs, ropes, and scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; no ladders, concentrated exposure to weather, humidity, wetness, or dusts, odors, fumes, gasses, or other pulmonary irritants; simple routine tasks and simple work-related decisions; and no more than occasional interaction with coworkers, supervisors, and the public. (R. 26). As a result of the RFC finding, the ALJ determined at step four that Walter has no past relevant work. *Id.* at 29. However, at step 5 the ALJ found that Walter has the RFC to perform occupations such as sorter, packager, and inspector. *Id.* at 30. Because of this determination, the ALJ found that Walter was not disabled. *Id.* The Appeals Council denied Walter's request for review on July 9, 2020, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 8-10; *Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020).

## DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether

a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 416.920(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 416.920(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) ("Substantial evidence is not a high threshold."). "Although this standard is generous, it is not entirely uncritical." *Steele*, 290 F.3d at 940. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Id.*

In support of his request for reversal and remand, Walter makes two arguments: (1) that the ALJ erred in his subjective symptoms assessment; (2) that the ALJ erred in evaluating the medical opinion evidence. Because the ALJ's decision is supported by more than a mere scintilla

3

of evidence and a reasonable mind can accept this evidence as adequate to support the conclusion, the Court affirms.

A.      **Subjective Symptoms**

Walter first argues that the ALJ erred in evaluating his subjective symptoms. "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 416.929(c). "An ALJ need not discuss every detail in the record as it relates to every factor," but an ALJ may not ignore an entire line of evidence contrary to her ruling. *Grotts*, 27 F.4th at 1278. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Id.* at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). Here, the ALJ supported his credibility findings with substantial evidence.

The ALJ considered Walter's testimony that he can stand for about fifteen minutes, walk about one block, sit for about fifteen minutes, lift up to ten pounds, has memory issues, has problems with simple instructions, and has mood swings that cause issues interacting with others. (R. 27). However, the ALJ concluded that while Walter's medically determinable impairments could reasonably be expected to cause the alleged symptoms, not all of his statements concerning the intensity, persistence and limiting effects of these symptoms can reasonably be accepted as consistent with the medical evidence and other evidence in the record. *Id.* In support of this

4

finding, the ALJ appropriately considered the applicable factors, including Walter's course of treatment, his medications, and his daily activities. *Id.* The ALJ considered Walter's testimony that he cares for his dogs, prepares simple meals, and plays board games with his family. *Id.* The ALJ also considered that Walter's mental health has remained stable with medication management by his primary care physician and with periodic counseling. *Id.* The ALJ also noted that Walter denied depression symptoms in recent records. *Id.* Further, the ALJ noted that Walter had minimal treatment for his low back complaints but acknowledged that imaging results did show degenerative changes in his lumbar spine. *Id.* Next, the ALJ considered that Walter did not follow through with referrals for physical therapy until late 2019 and had minimal treatment until a steroid injection, in late 2019. *Id.* Finally, the ALJ considered Walter's lumbar spine and neuropathy issues, and his recent physical therapy records indicating that his gait is within normal limits. *Id.* Still, Walter argues that the ALJ's credibility determination was patently wrong for three reasons, as further discussed below.

First, Walter argues that the ALJ erroneously emphasized his gaps in mental health treatment. An ALJ may consider infrequent treatment in support of an adverse credibility finding where the claimant does not have a good reason for the infrequency of treatment. *See Primm v. Saul*, 789 F. App'x 539, 545–46 (7th Cir. 2019); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). However, the ALJ "must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." SSR 96-7P (S.S.A. July 2, 1996); *Craft*, 539 F.3d at 678–79. Put another way, an ALJ is not required to ask a claimant about the failure to seek treatment, but the ALJ is required to consider possible reasons for the failure to seek treatment. *Deborah M. v. Saul,* 994 F.3d 785, 790 (7th Cir. 2021). Walter broadly argues that the ALJ made improper inferences about his scant mental health

5

treatment without exploring his explanation. Doc. [21] at 6-7. Yet, Walter does not offer any reasoning that the ALJ should have considered. Instead, Walter merely points out that he received Medicaid and food stamps. Doc. [21] at 6. Both Medicaid and food stamps are government initiatives that assist low-income individuals with access to medical care and nutrition. To the extent Walter suggests that his participation in these two programs explain his gap in medical care, that argument is underdeveloped. Further, there is no evidence in the record that Walter's gap in treatment was because he did not have medical insurance or because he was unable to cover the cost of treatment.

Moreover, the ALJ considered a possible explanation for Walter's gap in mental health treatment when he considered that Walter's mental health is stable with medication and periodic counseling. In *Deborah M. v. Saul,* the Seventh Circuit found that the ALJ properly considered the claimant's possible reason for failing to seek treatment because in a prior paragraph, the ALJ pointed out that the claimant reported that she was doing well, that she denied having weakness, dizziness, shortness of breath, or chest pain, and that she had normal muscle strength and tone. 994 F.3d at 790. Here, a couple of sentences prior to his statement that Walter has gaps in his mental health treatment, the ALJ pointed to a May 2018 progress note where Walter's primary care doctor treated his bipolar disorder by directing him to continue taking his medication and referring him to therapy. (R. 362-364). The ALJ also considered outpatient progress notes from a mental health medication monitoring program that Walter participated in at Riveredge Hospital. *Id*. at 535-539. Thus, similar to *Deborah,* the ALJ here also considered possible explanations for Walter's gap in mental health treatment when he referenced that Walter remained psychiatrically stabled with medication management by his primary care and periodic counseling. (R. 27). Therefore, although Walter does not identity any reason for the gap in his mental health treatment that the ALJ should

6

have considered, the ALJ did explore how Walter's stable medication regimen might have influenced his gap in mental health treatment.

Next, Walter argues that the ALJ erred in considering the gap in his medical treatment for his back pain. Doc. [21] at 8. However, Walter does not develop this argument, but instead argues that the ALJ should have mentioned Walter's physical therapy findings, the MRI findings, Walter's epidural injection, and the fact that surgery was once recommended to him. Walter is really inviting the Court to reweigh the evidence, which the Court will not do. *Grotts*, 27 F.4th at 1279 (rejecting claimant's criticism of the "ALJ's analysis of her daily functioning, her good and bad days, and her pain" as improperly inviting the Court to reweigh the evidence). Further, as stated earlier, an ALJ need not discuss every detail in the record but may not ignore an entire line of evidence. *Grotts*, 27 F.4th at 1278. Here, the ALJ considered Walter's lumbar degenerative disc disease, but he also noted that the record showed minimal treatment for his low back pain. (R. 27). Nonetheless, the ALJ supported his consideration of Walter's back pain and his treatment with substantial evidence. The ALJ considered 2018 x-ray results which state that Walter has degenerative disc disease at different levels of the lumbar spine. *Id.* at 373. Further the ALJ considered a 2018 consultive examination report where Walter exhibited a full range of motion in all extremities, an ability to squat, but tenderness and limitation in range of motion in the lumbar spine, and a slow gait. *Id*. at 27, 375-378. The ALJ also noted a pain clinic visit in September 2018 where Walter exhibited an antalgic gait, a slight restriction in range of motion of the spine, and a positive straight leg raise test on the left. *Id*. at 27, 630. Importantly, in that same September 2018 pain clinic note that the ALJ referenced, Walter's 2015 MRI results of multilevel degenerative disc disease was discussed. *Id.* at 630. Moreover, the ALJ considered that Walter did not follow through with physical therapy for his back until late 2019. *Id.* at 27, 635. The ALJ also

noted that Walter was resistant to physical therapy in 2019 and had minimal treatment of his back until he received a steroid injection in late 2019. *Id*. at 27, 576. Therefore, the ALJ appropriately considered Walter's examinations, the imaging findings, his physical therapy, and his 2019 steroid injection.

As stated earlier, an ALJ may consider infrequent treatment in support of an adverse credibility finding where the claimant does not have a good reason for the infrequency of treatment. *See Primm*, 789 F. App'x at 545–46. Walter does not provide a reason for his infrequent back treatment. Furthermore, Walter makes much of his argument that the ALJ did not directly address the 2015 MRI findings. But the ALJ made note of a doctor visit that analyzed the MRI finding, and ultimately the ALJ need not address every fact in the record. As such, the ALJ did not err in considering Walter's gaps in treatment and the ALJ supported his evaluation of Walter's back pain with more than a mere scintilla of evidence.

Finally, Walter contends that the ALJ erred in noting that he treated his mental health illness with medication, however Walter does not provide any authority for this argument that supports a remand.[1] Doc. [21] at 7. As noted earlier, the regulations allow the ALJ to consider medication as one of the factors in assessing a claimant's subjective symptom allegations. 20 C.F.R. § 416.929(c). Again, the ALJ considered that Walter remained psychiatrically stabled with medication management by his primary care and with periodic counseling. (R. 27). As such, the

---

[1] Walter also argues here that the ALJ did not factor in his daily activities and his efforts to minimize pain. However, with regard to daily activities, the ALJ considered that Walter passes the time caring for his dogs, that Walter makes simple meals, and that Walter plays board games with his family. (R. 27). Additionally, the ALJ accounted for Walter's efforts to minimize his pain by considering the consistency with which Walter sought treatment. *Id*. Walter's conclusory and undeveloped arguments do not point to a reversible error by the ALJ.

8

ALJ properly considered Walter's medication treatment in his credibility determination.[2] Thus, the Court concludes that the ALJ was not patently wrong in considering Walter's mental health treatment with medication or his gaps in mental health and back treatment in his evaluation of Walter's subjective symptoms.

**B.** **Medical Opinion Evidence**

Turning to his next challenge, Walter argues that the ALJ erred in evaluating the medical opinion evidence. The ALJ's evaluation of the medical opinion evidence was subject to new regulations pertaining to claims filed on or after March 27, 2017. 20 C.F.R. § 416.920c (2017). Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). An ALJ is only required to articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 416.920c(b). The regulations direct the ALJ to consider the persuasiveness of medical opinions using several listed factors, including supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 416.920c(a). An ALJ must explain how he considered the factors of

---

[2] Walter also argues that the ALJ erred in stating that Walter denied depression symptoms in recent medical records, because those same records state that Walter had worsening depression. Doc. [21] at 7. However, the ALJ did not misrepresent the record because they do show that Walter denied feeling depressed during depression screenings in 2019. (R. 608, 612). Moreover, those same records indicate that Walter was given an additional medication by his primary care to address the recent worsening of his depressive symptoms. *Id.* at 614, 618. Further, in the sentence preceding the ALJ's mention of Walter's depression screenings, the ALJ noted that Walter presented with a depressed mood at a consultive examination. *Id.* at 27. Thus, the ALJ minimally articulated his evaluation of Walter's depression, and the Court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the" ALJ's. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

supportability and consistency in his decision, but he is not required to explain how he considered the other factors. 20 C.F.R. § 416.920c(b)(2). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 416.920c(c)(1). As to consistency, "[t]he more consistent a medical opinion ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 416.920c(c)(2).

### 1. Dr. Kim's and Dr. Kenney's State Agency Medical Opinions

First, Walter contends that the ALJ erred in finding that the state agency physicians' opinions were well supported and persuasive because the agency physicians did not mention the findings from the 2015 MRI.[3] Doc. [21] at 9, 11. In his view, the 2015 MRI results are akin to new medical evidence that reveal a worsening of his degenerative disc disease. Notably, however, Walter does not state what exactly in the results of the 2015 MRI he is referring to. Walter points only to a 2018 review of the 2015 MRI findings that classify his disc degenerative disc disease as severe. *Id*.; (R. 630).

In the Seventh Circuit, an outdated state agency problem occurs if there exists "later evidence containing new, significant medical diagnoses [that] reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill,* 882 F.3d 722, 728 (7th Cir. 2018). For example, in *Stage v. Colvin*, the claimant suffered from arthritis in her back, hips, left leg, and shoulders, as well as spinal degeneration, a tear in a disc joint, and degenerative disc disease. 812 F.3d 1121, 1122 (7th Cir. 2016). There, the Seventh Circuit held that a later treating physician's "report, which diagnosed significant hip deformity, a restricted range of motion, and the need for

---

[3] Walter does not put forth any other challenge to the supportability or consistency of the state agency opinions.

a total left hip replacement, changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of [the treating physician's] report." *Id.* at 1125. Likewise, in *Lambert v. Berryhill* new evidence of failed surgical attempts to treat the claimant's pain and an opinion by the treating neurosurgeon that the claimant was no longer capable of even sedentary work was found to be new and significant evidence that reasonably could have changed the state agency physician's opinion. 896 F.3d 768, 776 (7th Cir. 2018). *See also Kevin George K. v. Berryhill*, No. 18 CV 3639, 2019 WL 2122987, at *7 (N.D. Ill. May 15, 2019) (new evidence showing, for the first time, that claimant suffered from seizures, as well as the treatment, monitoring, and testing for various syncopal episodes comprised significant and potentially decisive evidence that could have reasonably changed the reviewing physician's opinion). Moreover, in *Pavlicek v. Saul*, the Seventh Circuit found that records from two new emergency room visits relating to the claimant's tremors, and a doctor's observation that his tremors caused difficulties in functional matters such as walking and sitting in a chair, were not new significant medical diagnoses. 994 F.3d 777, 783 (7th Cir. 2021). The Seventh Circuit explained that the new medical evidence would not have changed the state physician's view because the physician already knew that the claimant was experiencing severe tremors, "so the later records corroborating this condition [did] not necessarily undermine his conclusions." *Id.* at 784.

Here, Walter claims that the 2015 MRI is new and significant evidence that was overlooked by the state reviewing physicians which reasonably could have changed their opinions. Doc. [21] at 9-11. At the outset, a critical fact in the above line of cases is absent from the present case. In *Stage, Lambert,* and *Pavlicek,* the alleged new medical evidence was introduced *after* the date of

11

the state physicians' opinions. Here, Walter's MRI was from October 2015, *three years prior* to the initial agency review. *Id.* at 95, 238. Thus, Walter's 2015 MRI is not new evidence.

Next, while the state agency doctors did not explicitly discuss the old 2015 MRI, they did consider it because they reviewed a 2018 consultive examination by Dr. Shah. Dr. Shah's examination recounted Walter's medical history, and in that summary, Dr. Shah noted the 2015 MRI findings. *Id*. at 375. Further, in Dr. Shah's physical examination of Walter's back, he found that Walter had tenderness in the lumbar region, that he had no deformities or paraspinal muscle spasms, that his flexion range of motion was 60 degrees, that his extension range was 15 degrees bilaterally, that his lateral flexions were 15 degrees, and that his straight leg raising was 45 degrees on the right side and 30 degrees on the left. *Id.* at 377. The state agency physicians reviewed Dr. Shah's examination and explicitly made note of Dr. Shah's physical examination findings of Walter's back. *Id.* at 84, 91, 99, 105. Therefore, even if the 2015 MRI could be considered new evidence, like in *Pavlicek*, it would only have corroborated his condition because the state agency physicians already knew about his degenerative disc disease diagnosis. Consequently, the 2015 MRI would not have changed the picture so much that the ALJ erred by continuing to rely on the state agency opinions.

Finally, Walter suggests that the ALJ did not consider the seriousness of his back pain because he did not mention a neurologist's recommendation for surgery, after the 2015 MRI revealed multilevel degenerative disc disease. Doc. [21] at 11; (R. 238). However, Walter's reliance on this statement is misplaced because the neurologist's full recommendation stated that Walter needed physical therapy, and *only if pain persisted* was surgery recommended. (R. 238). Walter does not explain how the neurologist's 2015 recommendation undermined the state agency physicians' review of Walter's degenerative disc disease. *See Keys v. Berryhill,* 679 F. App'x 477,

481 (7th Cir. 2017) (finding no error in the ALJ's reliance on the state agency physicians' opinions where the claimant provided no "evidence that the [MRI] reports would have changed the doctors' opinions."). Nonetheless, the neurologist's recommendation for physical therapy and surgery, *only if pain persisted*, does not undermine the state agency physicians' because they considered Walter's degenerative disc disease and Dr. Shah's 2015 MRI review. Moreover, as noted earlier, Walter did not comply with the neurologist's physical therapy recommendation until 2019, therefore the record does not show whether surgery was ever actually necessary. As such, the ALJ made no error in finding that the state agency physicians' opinions were well supported and persuasive.[4]

### 2. Dr. Phillips's State Agency Psychological Opinion

Walter also challenges the consistency of Dr. Phillips's psychological opinion. Doc. [21] at 11. Specifically, Walter contends that a conflict exists between the RFC limitation of occasional interactions with supervisors, coworkers, or the general public, and Dr. Phillips's statement that Walter could have only "the minimum social demands of simple-task settings." *Id.* The Court finds this argument waived because it is perfunctory, undeveloped, and unsupported by legal authority. *Overton*, 802 F. App'x at 193; *Krell*, 931 F.3d at 586.

Even if his perfunctory argument was not waived, the Court finds that it does not have merit. An ALJ has final responsibility for determining a claimant's RFC and need not adopt any one doctor's opinion. *Fanta v. Saul*, 848 F. App'x 655, 658–59 (7th Cir. 2021); *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the

---

[4] In this section, Walter also mentions that the state physicians' opinions were not supported because they did not consider his epidermal injection. However, Walter's argument is underdeveloped and therefore waived. *See Overton v. Saul*, 802 F. App'x 190, 193 (7th Cir. 2020); *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Nonetheless, Walter's one-time epidural injection to treat his back pain is not evidence of a new significant medical diagnosis.

13

ALJ alone–not a treating or examining doctor–to decide."); *Michael B. v. Berryhill*, No. 18 C 236, 2019 WL 2269962, at *6 (N.D. Ill. May 28, 2019) ("[T[he critical question is not whether the ALJ's RFC conclusions match a medical expert's opinion item-by-item but whether substantial evidence supports what the ALJ ultimately concluded about the claimant's RFC."). Here, the ALJ found the same social interaction limitation as the state psychological consultants. Both psychological consultants and the ALJ found that Walter is moderately limited in interacting with others. (R. 25, 93, 107, 108). In making his determination, the ALJ considered Walter's testimony that he is irritable and has mood swings that cause him to blow up. *Id.* at 25. The ALJ also noted that Walter was routinely cooperative at his examinations. *Id*. Further, the ALJ stated that given Walter's reports of intermittent issues getting along with others and the opinions of the psychological consultants, he reduced Walter's RFC capacity to only occasional interaction with others. Walter does not offer any support for his suggestion that more restrictive limitations were warranted. *Weave v. Berryhill*, 746 F. App'x 574, 5779 (7th Cir. 2018) (It is a claimant's "burden to establish not just the existence of the condition, but to provide evidence that they support specific limitations affecting her capacity to work."). Instead, Walter focuses on language from a narrative section in the reviewing psychologist's report, stating that Walter could have only "the minimum social demands of simple-task settings." Doc. [21] at 11. However, Walter does not consider that the narrative language comes only after Dr. Phillips's finding that Walter is moderately limited in interacting with others. (R. 108). Irrespective of what that language specifically means, however, it does not change Dr. Phillips's ultimate conclusion of a moderate limitation in social interactions. Thus, no inconsistency exists between the RFC and Dr. Phillips's findings, and more importantly, the ALJ supported his moderate social interaction limitation with more than a mere scintilla of evidence.

### 3. Dr. Dalawari's Treater Opinion

Finally, Walter challenges the ALJ's weighing of treating physician Dr. Dalawari's opinion. Doc. [21] at 11-12. In April 2019, Dr. Dalawari completed a medical source statement where she indicated that: Walter could sit for 8 hours in an 8-hour a workday; that he could stand/walk for one hour in an 8-hour a workday; that he could occasionally lift 10 pounds; that he could occasionally climb, but rarely balance, stoop, kneel or crouch; that he could rarely push or pull; that he would be off task for 20-30 percent of the 8-hour a workday; and that he would need an additional 1.5 hours of breaks in an 8-hour a workday. (R. 532-534).

The ALJ found Dr. Dalawari's various opinions unpersuasive because they were not supported by any narrative or citation to any clinical findings, and because they were inconsistent with the record, including Dr. Dalawari's own progress notes. (R. 28). *See Prill v. Kijakazi*, 23 F.4th 738, 750–51 (7th Cir. 2022) (finding that the ALJ was entitled to give the treating physician's opinion less weight because the doctor "did not provide objective exams or diagnostic testing to support the limitations he believed were necessary."). Walter does not engage with the ALJ's analysis of Dr. Dalawari or raise any specific challenge to the ALJ's reasoning on supportability, but only vaguely argues that the opinion should have been weighed differently because "Dalawari's records address medications for back pain, steroid injections, reference to not wanting physical therapy and note of starting sertraline for bipolar disorder." Doc. [21] at 11-12. As a result, the Court considers Walter's challenge to the ALJ's weighing of Dr. Dalawari's opinion to be waived. *Overton*, 802 F. App'x at 193; *Krell*, 931 F.3d at 586.

Even if not waived, the Court affirms the ALJ's finding on Dr. Dalawari's opinion because it was supported by more than a scintilla of evidence. In support of his determination, the ALJ explained that Dr. Dalawari's extreme limitations were inconsistent with her normal physical

15

examination findings of Walter. (R. 28); *see Pavlicek*, 994 F.3d at 781–82 (finding that substantial evidence supported the ALJ's finding that the medical records—including the treating physician's own notes—undermined the doctor's opinion of serious functional limitations); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) ("An ALJ may discount a treating physician's medical opinion . . . when the treating physician's opinion is internally inconsistent, . . . as long as he 'minimally articulate[s] his reasons for crediting or rejecting evidence of disability.'"). The ALJ considered a progress note from January 2019 where Walter complained of back pain, but where Dr. Dalawari's physical examination was generally normal. (R. 528-529). The examination findings were that Walter was pleasant, alert and oriented, in no acute distress, well-nourished, well-hydrated, well-developed, with unremarkable head, neck, heart, lungs, abdomen, and extremities, and no neurological abnormalities. *Id.* The ALJ also considered a progress note from a March 2019 follow up appointment where Dr. Dalawari's physical examination was again generally normal. *Id.* at 590. Moreover, earlier in the opinion the ALJ considered Walter's minimal treatment for his low back pain. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole."). The ALJ also considered that Walter exhibited a full range of motion in all extremities. (R. 27). Further, the ALJ considered that Walter could squat, but also noted his tenderness and limitation in range of motion in the lumbar spine and that he exhibited an occasional slow gait. *Id.* In sum, the ALJ's evaluation of Dr. Dalawari's opinion was supported by more than a scintilla of evidence, the Court can follow the ALJ's reasoning, and a reasonable mind can accept the ALJ's conclusion.

## CONCLUSION

For the reasons stated above, Walter's request for reversal and remand [21] is denied, the Acting Commissioner's Motion for Summary Judgment [26] is granted, and the ALJ's decision is

affirmed. The Clerk is directed to enter judgment in favor of the Acting Commissioner and against Plaintiff.

**SO ORDERED.**

Dated: June 7, 2022

Sunil R. Harjani
United States Magistrate Judge